IN THE UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| DARLA MCCULLOUGH,<br>*Administratrix of the Estate of John Milford McCullough*,<br><br>　　　Plaintiff,<br><br>　　　vs.<br><br>CLINTON COUNTY, et al.,<br><br>　　　Defendants. | **FILED ELECTRONICALLY**<br><br>CIV. ACTION NO. 4:23-cv-00171<br><br>**JURY TRIAL DEMANDED** |

## BRIEF IN SUPPORT OF MOTION TO DISMISS PLAINTIFF'S COMPLAINT

Defendants Nurse Christina Mazzulla and Wellpath, LLC ("Moving Defendants"), by and through their attorneys, hereby submit the following Brief in Support of their Motion to Dismiss Plaintiff's Complaint per Rule 12(b)(6) for a failure to state a claim upon which relief may be granted.

**I.   STATEMENT OF THE CASE**

This is a civil rights action pursuant to 42 U.S.C. §1983 brought by Plaintiff, Darla McCullough, as the administratrix of the estate of John Milford McCullough, her deceased husband. (ECF No. 1). Plaintiff commenced this lawsuit on or about January 31, 2023, with the filing of a Complaint. *Id*. The action arises out of events occurring in October 2021 at the Clinton County Correctional Facility (CCCF) in

1

McElhattan, Pennsylvania. *Id*. Moving Defendants were contracted health services providers to CCCF.[1]

According to the Complaint[2], on or about October 14, 2021, Plaintiff, Darla McCullough, sought an emergency from protection from abuse order against decedent, John McCullough, because he had been becoming increasingly agitated and depressed. (ECF No. 1, ¶ 18). Pursuant to this October 14th Order, Mr. McCullough was required to relinquish his firearms to the Clinton County Sheriff's Office, yet he retained a single shotgun. *Id*. at ¶ 19. The next day, October 15th, Darla McCullough reported to the Pennsylvania State Police that Mr. McCullough had violated the terms of the order. *Id*. at ¶ 20. Mr. McCullough was charged with contempt for violation of the order the same day. *Id*. at ¶ 21.

Three days later, on or about October 18, 2021, a family member of Mr. McCullough submitted an application for involuntary emergency and examination for him. *Id*. at ¶ 23. Local Police and State Troopers found Mr. McCullough barricaded in his home where he had laid out family effects and his birth certificate with plans to kill himself. *Id.* at ¶¶ 24-26. Mr. McCullough was eventually

---

[1] It is acknowledged that the Complaint alleges Defendant William Detterline "was at all times relevant hereto a nurse employed by Wellpath who provided medical services at CCCF." (ECF No. 1, ¶ 24). Upon information and belief, Mr. Detterline was not employed by Wellpath, LLC in October 2021; therefore, he is not represented by the undersigned. Additionally, all other named defendants are represented by separate counsel.

[2] The following narrative of events is based upon the allegations pled by the Complaint. (ECF No. 1, ¶¶ 16-98).

convinced to leave the home without incident, and he was then transported to the emergency room at UPMC Williamsport where it was noted that he presented with depression and suicidal ideation. *Id*. at ¶¶ 29-30. While at UPMC Williamsport on October 18th, it was found to be in need of inpatient psychiatric care. *Id*. at ¶¶ 33-34. Mr. McCullough was transferred to UPMC Altoona from UPMC Williamsport on October 20, 2021. *Id*. at ¶ 35.

On October 22, 2021, Mr. McCullough was discharged from UPMC Altoona to CCCF. *Id*. at ¶ 36. The CCCF Central Processing Data Sheet, completed on October 22nd, indicated that Mr. McCullough was suicide with thoughts of self-harm. *Id*. at ¶ 37. At the time of Mr. McCullough's intake at CCCF, corrections and medical staff were informed of his depression and that he had been committed under a 302 order with suicidal ideations. *Id*. at ¶¶ 39, 41. That day, October 22nd, Nurse Christina Mazzulla completed a medical receiving triage form for Mr. McCullough at which time it was noted that he displayed aggressive behavior and there was reason to believe he may be suicidal. *Id.* at ¶¶ 42-43. Mr. McCullough was not placed on suicide watch at that time, and he was cleared to book and to proceed with medical intake. *Id*. at ¶¶ 44-45.

Nurse William Detterline then completed a receiving screening for Mr. McCullough on October 22, 2021. *Id*. at ¶ 46. Nurse Detterline checked the box "other" for monitoring status, although "suicide watch" was an option. *Id*. at ¶ 47.

Nurse Detterline then chose general population for a housing option. *Id*. at ¶ 48. Nurse Detterline also noted that an urgent mental health referral was needed. *Id*. at ¶ 49. Nurse Detterline noted that Mr. McCullough had answered "no" to the questions "expresses thoughts about killing self" and "has a suicide plan and/or suicide instrument in possession." *Id*. at ¶ 50. Nurse Detterline did not place Mr. McCullough on suicide watch. *Id*. at ¶ 51.

Officer Jeremy Shank booked Mr. McCullough on October 22nd and assigned him to cell 2, which is a recorded cell. *Id*. at ¶¶ 52, 54. Officer Shank noted that Mr. McCullough was provided a mat, two sheets, and one blanket. *Id*. at ¶ 57. A behavioral authorization approval form was also completed, indicating that Mr. McCullough was placed on "Behavioral Observation Level B" with no razor and he was to be "checked a minimum of every 30 minutes." *Id*. at ¶ 61. A separate receiving report signed by Nurse Detterline on October 23rd noted that Mr. McCullough had current psychotropic medication and history of psychiatric hospitalization within the last seven days. *Id*. at ¶¶ 64-65.

On October 24, 2021, at approximately 3:30 p.m., medical staff was called to holding cell two because there was a report that Mr. McCullough had fallen out of the top bunk and hit his head on the ground. *Id*. at ¶¶ 60-70. EMS was called and Mr. McCullough was transported to Jersey Shore Hospital, complaining of right shoulder and right hip pain. *Id*. at ¶ 72. At Jersey Shore Hospital, Mr. McCullough

was diagnosed with vocal cord paralysis and contusions on the head, right hip, right shoulder, and upper arm. *Id*. at ¶ 75. He was discharged from Jersey Shore Hospital at 8:16 p.m. on October 24th and transported back to CCCF. *Id*. at ¶ 76.

Upon Mr. McCullough's return to CCCF, Nurse Detterline planned to arrange a follow up appointment with ENT for possible vocal chord paralysis. *Id*. at ¶ 77. Mr. McCullough was then returned to behavior watch and put in classification cell four, which is a recorded cell that is under constant video surveillance. *Id*. at ¶¶ 81-82.

On October 26, 2021, in the early morning, Mr. McCullough hanged himself from a pipe in cell four with a bed sheet. *Id*. at ¶ 85. At the time of Mr. McCullough's death, Lieutenant Muthler and Correctional Officers Etters, King, and Young were on duty and tasked with monitoring Mr. McCullough. *Id*. at ¶ 87. Officer Etters who was responsible for conducting checks of Mr. McCullough based upon his previous checks, was "out getting a milk delivery…" *Id*. at ¶¶ 92-93. Central Control called 911 at 3:42 a.m. per Nurse Beaver. *Id*. at ¶ 96. EMS found Mr. McCullough at 4:20 a.m. to be clinically dead. *Id*. at ¶ 97. Mr. McCullough was pronounced dead at UPMC Lock Haven at 4:42 a.m. *Id*. at ¶ 98.

Based upon the above allegations, the Complaint raises the following claims against Moving Defendants: (Count One) Deliberate Indifference to a serious medical need in violation of the Fourteenth Amendment against Nurse Mazzulla,

and (Count Two) Deliberate Indifference to a serious medical need in violation of the Fourteenth Amendment (*Monell*) against Wellpath, LLC.

Moving Defendants now move for dismissal of Counts One and Two of Plaintiff' Complaint, pertaining to deliberate indifference to a serious medical need, on the basis that she has failed to state a claim upon which relief may be granted. Therefore, Ms. McCullough's Complaint must be dismissed under Rule 12(b)(6) of the Federal Rules of Civil Procedure.

## II. ARGUMENT

### A. PLAINTIFF'S COMPLAINT FAILS TO STATE A CLAIM FOR A VIOLATION OF DECEDENT'S RIGHTS UNDER EITHER THE EIGHTH OR FOURTEENTH AMENDMENTS FOR DELIBERATE INDIFFERENCE TO A SERIOUS MEDICAL NEED AS TO NURSE MAZZULLA.

Plaintiff's allegations against Nurse Mazzula do not rise to the level of a constitutional violation.[3] As provided by the Complaint, Nurse Mazzulla's personal

---

[3] Because Mr. McCullough was a pre-trial detainee, Plaintiff's claim must be assessed under the Due Process Clause of the Fourteenth Amendment, not the Eighth Amendment prohibition against Cruel and Unusual Punishment. *See*, Natale v. Camden County Correctional Facility, 318 F.3d 575, 581 (3d Cir. 2003). Even so, a pretrial detainee's claim is still analyzed under the familiar standard established in Estelle v. Gamble for Eighth Amendment claims. Rouse v. Plantier, 182 F.3d 192, 197 (3d Cir. 1999). *See also* Edwards v. Northampton County, 663 Fed. App'x 132, 136 (3d Cir. 2016) ("pre-trial detainee's claim for inadequate medical care adjudicated under the Due Process Clause," but "decisions interpreting the Eighth Amendment serve as 'useful analogies.'").

involvement[4] with respect to the events at issue are limited to the following allegations:

- On October 22, 2021, Nurse Mazzulla completed a medical receiving triage form upon Mr. McCullough's arrival at CCF;

- During medical receiving triage, Mr. McCullough was documented to have displayed aggressive behavior and there was reason to believe that he may be suicidal; and

- Despite these observations, Nurse Mazzulla did not place Mr. McCullough on suicide watch and cleared him to book and to proceed with medical intake.

(ECF No. 1, ¶¶ 42-45). These are the only allegations specific to Nurse Mazzulla, and when considering the case law set forth below, they fall far short of a constitutional violation.

In order to state a claim against a correctional health care provider under 42 U.S.C. §1983, a plaintiff must prove "deliberate indifference to a serious medical need" on the part of the provider. Estelle v. Gamble, 429 U.S. 97, 104, 97 S. Ct. 285, 50 L. Ed. 2d 251 (1976). Subjectively, prison officials must exhibit "deliberate indifference" to those needs. Atkinson v. Taylor, 316 F.3d 257, 272-73 (3d Cir. 2003).

Further, and as recently observed by Judge Brann of this District, in cases involving suicide in a jail or prison setting, a three-prong test must be analyzed for

---

[4] "A defendant in a civil rights action must have personal involvement in the alleged wrongdoing…Personal involvement can be shown through allegations of personal direction or of actual knowledge and acquiescence." Rode v. Dellarciprete, 845 F.2d 1195, 1207 (3d Cir.1988).

Section 1983 claims. *See*, McAndrew v. Northumberland Cnty., 2023 U.S. Dist. LEXIS 13014, 2023 WL 408905 (M.D. Pa. January 25, 2023) (J. Brann). As Judge Brann noted:

> It is established in the Third Circuit that whether a pre-trial detainee or a convicted prisoner, a plaintiff bringing a claim arising from a jail suicide must show:
>
> (1) that the individual had a particular vulnerability to suicide, meaning that there was a strong likelihood, rather than a mere possibility that a suicide would be attempted;
>
> (2) that the prison official knew or should have known of the individual's particular vulnerability; and
>
> (3) that the official acted with reckless or deliberate indifference, meaning something beyond mere negligence, to the individual's particular vulnerability.

*Id.*, *citing*, Palakovic v. Wetzel, 854 F.3d 209, 223-224 (3d Cir. 2017). "[A] prison custodian is not a guarantor of a prisoner's safety, and therefore the fact that a suicide took place is not enough on its own to establish that prison officials were recklessly indifferent in failing to take precautions to protect prisoners entrusted to their care. *Id.* at *7, *citing* Wargo v. Schuylkill County, 348 F. App'x 756, 759 (3d Cir. 2009). Plaintiff's claim against Nurse Mazzulla fails at the third prong.

As for the first prong, and whether the Complaint sufficiently pleads facts alleging that Mr. McCullough had a particular vulnerability for suicide, Judge Brann further noted that to satisfy the prong, "a plaintiff must establish that there is a 'strong likelihood, rather than a mere possibility, that self-inflicted harm will

8

occur.'" *Id*. at *8, *citing* Hinton v. United States, 2015 U.S. Dist. LEXIS 20455, at *11 (M.D. Pa. 2015). In Mr. McCullough's case, based upon the allegations that Nurse McCullough was made aware of his recent 302 commitment and suicidal ideation, this prong is arguably met.

As for the second prong—i.e. the Complaint sufficiently pleads facts demonstrating that the Jail staff knew or should have known of Mr. McCullough's particular vulnerability for suicide—to satisfy the prong, "the plaintiff must plead facts that show that the strong likelihood of suicide was so obvious that a layperson would easily recognize the necessity for preventative action." *Id*. at *9, *citing*, Hinton, 2015 U.S. Dist. LEXIS 20455, at *13. "It is not necessary that the custodian have a subjective appreciation of the detainee's 'particular vulnerability…[n]evertheless, there can be no reckless or deliberate indifference to that risk unless there is something more culpable on the part of the officials than a negligent failure to recognize the high risk of suicide.'" *Id*. at *9, *citing* Woloszyn v. County of Lawrence, 396 F.3d 314, 330 (3d Cir. 2005). Plaintiff has arguably satisfied the second prong given her allegations that during triage, it was documented that there was reason to believe that Mr. McCullough was suicidal.

As for the third and final prong, however, Plaintiff has not satisfied the prong. The question for this prong is whether the Complaint sufficiently pleads facts demonstrating that the official acted with reckless or deliberate indifference,

9

meaning something beyond mere negligence, to Mr. McCullough's particular vulnerability. *Id.* at *10-11. As noted by Judge Brann, courts in the Third Circuit have also required a plaintiff plead causation, which has been stated to be "causal nexus." *Id.* at *11, *citing* Hamilton v. Leavy, 117 F.3d 742, 746 (3d Cir. 1997). "'Because of the nature of the [vulnerability-to-suicide] analysis,' determinations as to whether a plaintiff can establish deliberate indifference or merely negligence in prison suicide cases 'are very fact sensitive.'" *Id.* at *11, *citing* Carlos v. York Cty., 2019 U.S. Dist. LEXIS 211385, at *54 (M.D. Pa. 2019).

Here, Plaintiff's claim against Nurse Mazzulla fails at the third prong because the limited allegations for Nurse Mazzulla suggest at most that she was negligent in not directing that Mr. McCullough was placed on suicide watch. Otherwise, the allegations fail to suggest that Nurse Mazzulla in anyway acted recklessly[5] or with deliberate indifference[6] to Mr. McCullough's condition and the fact that he eventually committed suicide in custody, in and of itself, is not proof that she acted in such manner. *See, e.g.*, Lawniczak v. Cty of Allegheny, 811 Fed. App'x 743, 746-47 (3d Cir. 2020) (finding that the district court had not erred by finding the

---

[5] Reckless indifference "is a willingness to ignore a foreseeable danger to the detainee's vulnerability, or conscience-shocking behavior in unhurried situations." Kedra v. Schroeter, 876 F.3d 424, 446 (3d Cir. 2007).

[6] Under a "deliberate indifference" standard, even "officials who actually knew of a substantial risk to inmate health and safety may be found free from liability if they responded reasonably to the risk, even if the harm ultimately was not averted." Farmer v. Brennan, 511 U.S. 825, 844 (1994).

correctional officers and nurses had not acted with reckless or deliberate indifference in their treatment of a prisoner who eventually hanged himself in his cell). As averred in the Complaint, although Ms. Mazzulla did not place Mr. McCullough on suicide watch, he was still being processed for medical intake by others who could have made that designation and, even so, he was still placed in an observation cell for regular monitoring. Under these facts, Ms. Mazzulla's actions do not rise to the level of "conscious-shocking behavior" for her to be deemed reckless nor do her actions exhibit that she was indifferent to Mr. McCullough's particular vulnerability.

Moreover, there are no facts pertaining to Ms. Mazzulla that would create a causal nexus to his eventual death. Even if Nurse Mazzulla improperly decided that Mr. McCullough did not require suicide watch, given he was already on behavioral monitoring and placed in an observation cell, that would not amount to a constitutional violation. Lorenzano v. Kollman, 2019 U.S. Dist. LEXIS 1311*16-17 (M.D. Pa. 2019) ("It is well-settled that misdiagnosis is not deliberate indifference, but rather amounts to medical malpractice, which is not actionable under the Eighth Amendment."); *see also*, Cobbs v. Caputo, 578 F. App'x 84, 85 (3d Cir. 2014). Further, there are no facts pled in the Complaint that Ms. Mazzulla was in anyway responsible for monitoring Mr. McCullough such that she could have intervened in preventing his suicide while he was being housed in an observation cell that was to be monitored by corrections officers.

Accordingly, Nurse Mazzulla respectfully requests that any claims Plaintiff raises against her for deliberate indifference to a serious medical need, or failure to provide medical care, as set forth by Count One of the Complaint be dismissed with prejudice.

### B. PLAINTIFF'S COMPLAINT FAILS TO STATE A CLAIM FOR A VIOLATION OF HIS RIGHTS UNDER EITHER THE EIGHTH OR FOURTEENTH AMENDMENTS PURSUANT TO *MONELL* FOR WELLPATH, LLC.

Even though Plaintiff has failed to state an underlying basis for constitutional violation as set forth above,[7] her deliberate indifference claims against Wellpath, LLC must also be dismissed because she has failed to sufficiently allege that Wellpath maintains a policy, custom, or practice of deliberate indifference to Mr. McCullough's serious medical needs which led to his alleged harm. While Plaintiff includes generalized allegations that Wellpath and the County maintained policies or customs of deliberate indifference to Mr. McCullough's needs (ECF No.1, ¶¶ 123-137), that is all that is alleged, i.e. generalized allegations without reference to specific policies or customs maintained by Wellpath which actually led to the harm in this case. As will be discussed below, applicable case law requires more to advance an 8th Amendment claim against Wellpath.

---

[7] In the absence of an underlying constitutional violation, a Monell claim must fail as a matter of law. See, Smith v. Snyder Cty. Prison, 2017 U.S. Dist. LEXIS 111464 *50 (M.D. Pa. 2017), citing, City of Los Angeles v. Heller, 475 U.S. 796, 799 (1986).

12

Initially, to the extent that Plaintiff purports to assert liability as to Wellpath premised upon vicarious liability and *respondeat superior* for the actions or inactions of its employees, including Nurse Mazzula, her allegations must fail as a matter of law because vicarious liability is not recognized under 42 U.S.C. §1983 and, thus, Wellpath cannot be vicariously liable for the alleged unconstitutional acts of its employees.

"In Monell v. New York City Dept. of Social Servs., 436 U.S. 658, 689 (1978), the United States Supreme Court held that although municipalities and other local governmental bodies are 'persons' within the meaning of section 1983, a municipality may not be held vicariously liable under section 1983 solely because of the existence of an employer-employee relationship with a tortfeasor." Patterson v. Armstrong Cty. Children & Youth Servs., 141 F. Supp. 2d 512, 525 (W.D. Pa. 2001). "Monell applies not only to municipalities, but also extends to private organizations faced with Section 1983 liability for actions under color of state law." Kauffman v. Pa. Soc'y for the Prevention of Cruelty to Animals, 766 F. Supp. 2d 555, 561-62 (E.D. Pa. 2011); see also Regan v. Upper Darby Twp., 363 F. App'x 917, 922 (3d Cir. 2010) ("[A] city, municipality, or private entity that is a state actor may not be held vicariously liable under § 1983 for the actions of its agents because there is no *respondeat superior* theory of municipal liability."); Natale v. Camden County Corr. Facility, 318 F.3d 575, 584 (3d Cir. 2003) (because *respondeat*

13

*superior* or vicarious liability cannot be a basis for liability under 42 U.S.C. § 1983, a corporation under contract with the state cannot be held liable for the acts of its employees and agents under those theories).

As such, liability of such entities may not rest on *respondeat superior*, but rather must be based upon a governmental policy, practice, or custom that caused the injury. Monell, 486 U.S. at 690-94; see also Thomas v. Zinkel, 155 F. Supp. 2d 408, 412 (E.D. Pa. 2001). Therefore, in order to state a § 1983 claim against Wellpath, "the plaintiff must show that the corporation, 'with deliberate indifference to the consequences, established and maintained a policy, practice or custom which directly caused [plaintiff's] constitutional harm.'" Roach v. SCI Graterford, 398 F. Supp. 2d 379, 388 (E.D. Pa. 2003) (*quoting* Stoneking v. Bradford Area Sch. Dist., 882 F.2d 720, 725 (3d Cir. 1989)); Baez v. Falor, 2012 U.S. Dist. LEXIS 138574, *135, 2012 WL 4356768 (W.D. Pa. 2012). Plaintiff has failed to do so in this case.

As recognized above, the Complaint sets forth a series of generalized allegations against both Wellpath and the County for maintaining either a policy or custom of deliberate indifference to Mr. McCullough's needs. (ECF No. 1, ¶¶ 123-137). Beyond these speculative conclusions of Wellpath's policies and/or customs, the Complaint fails to allege specific facts as to what particular policy or custom that Wellpath maintained which allegedly led to Mr. McCullough's death. As such, the

Complaint fails to set forth sufficient factual averments which could advance a *Monell* claim against Wellpath.

Accordingly, Wellpath, LLC respectfully requests that Plaintiff's claim of deliberate indifference at Count Two be dismissed with prejudice.

### III.    CONCLUSION

For the reasons set forth herein, Defendants Christina Mazzulla and Wellpath, LLC respectfully request that this Honorable Court grant their Motion to Dismiss and enter the attached proposed Order.

                Respectfully submitted,

        WEBER GALLAGHER SIMPSON STAPLETON
               FIRES & NEWBY LLP

BY:   /s/ Benjamin M. Lombard
       Benjamin M. Lombard, Esquire
       blombard@wglaw.com
       PA ID No. 322376

       Samuel H. Foreman, Esquire
       sforeman@wglaw.com
       PA ID No. 77096

       WEBER GALLAGHER SIMPSON
       STAPLETON FIRES & NEWBY, LLP
       Four PPG Place, 5th Floor
       Pittsburgh, PA 15222
       (412) 281-4541
       (412) 281-4547 FAX

## **CERTIFICATE OF WORD COUNT**

I, Benjamin M. Lombard, Esquire, hereby certify pursuant to LR 7.8(b)(2) that this Brief in Support of Defendants' Motion to Dismiss complies with the word-count limit described in LR 7.8(b) inasmuch as the Brief contains 3,399 words.

         /s/ Benjamin M. Lombard
         Benjamin M. Lombard, Esq.

Dated:    April 3, 2023

## CERTIFICATE OF SERVICE

I, Benjamin M. Lombard, Esquire, hereby certify that on this date a true and correct copy of the foregoing **BRIEF IN SUPPORT OF MOTION TO DISMISS PLAINTIFF'S COMPLAINT** was sent to all counsel of record *via* CM/ECF to the following:

Barry H. Dyller, Esq.
Chad J. Sweigart, Esq.
Dyller & Solomon, LLC
88 North Franklin Street
Wilkes-Barre, PA 18701
*Counsel for Plaintiff*

Frank J. Lavery, Esq.
Andrew W. Norfleet, Esq.
Lavery Law
225 Market St., Suite 304
Harrisburg, PA 17108
*Counsel for Clinton County, Lt. Muthler, and Officer Etters*

                                                       /s/ Benjamin M. Lombard
                                                Benjamin M. Lombard, Esquire

Dated:            April 3, 2023