## UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF PENNSYLVANIA

DARLA MCCULLOUGH, *Administratrix of the Estate of John Milford McCullough*,

Plaintiff,

v.

CLINTON COUNTY, et al.,

Defendants.

CIVIL ACTION NO. 4:23-CV00171

(MEHALCHICK, J.)

## MEMORANDUM

This action was commenced by Darla McCullough ("Plaintiff") as the Administratrix of the Estate of John Milford McCullough ("Mr. McCullough") by filing a complaint against Defendants Clinton County ("the County"), Wellpath, LLC ("Wellpath"), Jeremy Shank ("Officer Shank"), Lieutenant Muthler ("Officer Muthler"), Officer Etters, Officer Iantha King ("Officer King"), Officer Young, William Detterline ("Nurse Detterline"), and Christina Mazzulla ("Nurse Mazzulla") on January 31, 2023. (Doc. 1). The operative amended complaint was filed on September 11, 2023, against the aforementioned Defendants and Supplemental Health Care Services, Inc. ("SHC") (collective, Defendants"). (Doc. 58). The amended complaint alleges violations of the Fourteenth Amendment pursuant 42 U.S.C. § 1983 ("§ 1983"), the Americans with Disabilities Act, and the Rehabilitation Act. (Doc. 58). Presently before the Court are four motions to dismiss filed by Defendants. (Doc. 64; Doc. 64; Doc. 65; Doc. 76).

## I. BACKGROUND AND PROCEDURAL HISTORY

The following factual summary is taken from the amended complaint. This case arises from the death of Mr. McCullough while he was in the care and custody of Clinton County Correctional Facility ("CCCF"). Plaintiff alleges that at the time of his incarceration, Mr.

McCullough had "a particular vulnerability to suicide and demonstrated a strong likelihood that he would attempt suicide." (Doc. 58, ¶ 102). On October 18, 2021, a family member of Mr. McCullough filed a 302 application for the involuntary emergency examination and treatment of Mr. McCullough. (Doc. 58, ¶ 25). 911 was called and local police and troopers from Pennsylvania State Police-Lamar arrived at Mr. McCullough's home to find him barricaded with a loaded shotgun and plans to kill himself. (Doc. 58, ¶ 26). Mr. McCullough also expressed intent to kill Plaintiff "so she was not left behind." (Doc. 58, ¶ 29). Ultimately, Mr. McCullough was convinced to be transported by police to UPMC Williamsport. (Doc. 58, ¶ 31). There, he was evaluated in the emergency room and noted to be depressed, suicidal, and "severely mentally disabled and in need of treatment." (Doc. 58, ¶¶ 32-34). Mr. McCullough reported that he intended to shoot himself and if not for the "police involvement he would have committed suicide by gunshot." (Doc. 58, ¶¶ 32, 34). From UPMC Williamsport, Mr. McCullough was transferred to UPMC Altoona, where again he was documented to be suicidal. (Doc. 58, ¶ 37).

Mr. McCullough was discharged from UPMC Altona and transported to CCCF on October 22, 2021. (Doc. 58, ¶ 39). According to CCCF intake documentation, Mr. McCullough appeared to be suicidal and was experiencing thoughts of self-harm. (Doc. 58, ¶ 39). According to the amended complaint, at this time the County, Wellpath, and their staff were informed of the events of October 18, 2021, and that Mr. McCullough had been committed under a 302 order due to suicidal behaviors. (Doc. 58, ¶ 43). Still, after being triaged and screened, Mr. McCullough was not placed on suicide watch. (Doc. 58, ¶¶ 45-49). Instead, Mr. McCullough was placed in general population where he was given a mat, two sheets, a blanket, and assigned to a cell with a cellmate. (Doc. 58, ¶¶ 50, 59, 71).

On October 24, 2021, Mr. McCullough's cellmate reported that Mr. McCullough had fallen out of his top bunk and onto the ground of their cell. (Doc. 58, ¶ 72). According to Plaintiff, Mr. McCullough's fall was an attempt to injure or kill himself, as evidenced by injuries specifically to his neck. (Doc. 58, ¶ 81). Still, upon his return to CCCF, Mr. McCullough was not placed on suicide watch. (Doc. 58, ¶ 82). Mr. McCullough was instead put on a behavioral watch, where he was to be monitored under constant video surveillance. (Doc. 58, ¶¶ 83-84, 86-87). According to Plaintiff, the correctional officers were remiss in their duties to survey Mr. McCullough. (Doc. 58, ¶¶ 86-87). On October 26, 2021, Ms. McCullough hung himself from a pipe with a bed sheet. (Doc. 58, ¶ 87). Plaintiff asserts that Mr. McCullough's death is recorded on video. (Doc. 58, ¶ 88).

In her amended complaint, Plaintiff asserts the following Counts: Count I: Fourteenth Amendment Deliberate Indifference against Officer Muthler, Officer King, Officer Etters, Officer Young, Officer Shank, Nurse Detterline, and Nurse Mazzulla; Count II: Fourteenth Amendment Deliberate Indifference against the County, Wellpath, and SHC; Count III: Violation of the Americans with Disabilities Act ("ADA") against the County; Count IV: Violation of the Rehabilitation Act ("RA") against the County; and Count V: Fourteenth Amendment State-Created Danger against the County and Officer Shank. (Doc. 58). As relief, Plaintiff seeks damages, including punitive damages, attorneys' fees and costs. (Doc. 58, at 27-28).

On September 24, 2023, Nurse Detterline filed a motion to dismiss. (Doc. 63). On September 25, 2023, Officer Etters, Officer King, Officer Muthler, Officer Shank, and Officer Young (collectively, "Correctional Officer Defendants") and the County (collectively, "County Defendants") filed a motion to dismiss. (Doc. 64). On September 25, 2023, Nurse

Mazzulla and Wellpath (collectively, "Wellpath Defendants") filed a motion to dismiss. (Doc. 65). On October 9, 2023, Nurse Detterline, County Defendants, and Wellpath Defendants each filed a brief in support of their respective motions. (Doc. 67; Doc. 68; Doc. 69). On October 13, 2023, Plaintiff filed a brief in opposition to both Nurse Detterline and Wellpath Defendants' motions to dismiss. (Doc. 70; Doc. 71). On October 20, 2023, Plaintiff filed a brief in opposition to County Defendants' motion to dismiss. (Doc. 72). County Defendants filed a reply brief on November 13, 2023. (Doc. 77). Neither Nurse Detterline nor the Wellpath Defendants have opted to file a reply brief and the time to do so has passed.

On November 13, 2023, SHC filed a motion to dismiss, or in the alternative, a motion for summary judgment. (Doc. 76). On November 27, 2023, SHC filed a brief in support of their motion. (Doc. 78). On December 11, 2023, Plaintiff filed a brief in opposition. (Doc. 79). On December 26, 2023, SHC filed a reply brief. (Doc. 80). Accordingly, all four motions to dismiss are ripe and ready for discussion. (Doc. 63; Doc. 64; Doc. 65; Doc. 76). For the following reasons, Nurse Detterline, Wellpath Defendants, and SHC's motions to dismiss will be **DENIED**. (Doc. 63; Doc. 65; Doc. 76). County Defendants' motion to dismiss will be **DENIED** in part and **GRANTED** in part. (Doc. 64).

## II.   LEGAL STANDARDS

### A.   MOTION TO DISMISS

Rule 12(b)(6) of the Federal Rules of Civil Procedure authorizes a defendant to move to dismiss for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). "Under Rule 12(b)(6), a motion to dismiss may be granted only if, accepting all well-pleaded allegations in the complaint are true and viewing them in the light most favorable to the plaintiff, a court finds the plaintiff's claims lack facial plausibility." *Warren Gen. Hosp. v.*

*Amgen Inc.*, 643 F.3d 77, 84 (3d Cir. 2011) (citing *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555-56 (2007)). Although a court must accept the factual allegations in a complaint as true, it is not compelled to accept "unsupported conclusions and unwarranted inferences, or a legal conclusion couched as a factual allegation." *Morrow v. Balaski*, 719 F.3d 160, 165 (3d Cir. 2013) (quoting *Baraka v. McGreevey*, 481 F.3d 187, 195 (3d Cir. 2007)). Additionally, a court need not assume that a plaintiff can prove facts that the plaintiff has not alleged. *Associated Gen. Contractors of Cal. v. California State Council of Carpenters*, 459 U.S. 519, 526 (1983).

In *Ashcroft v. Iqbal*, the United States Supreme Court held that, when considering a motion to dismiss, a court should "begin by identifying pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth." 556 U.S. 662, 679 (2009). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal*, 556 U.S. at 678. "Factual allegations must be enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555. In evaluating a motion to dismiss, a court may consider the facts alleged on the face of the complaint, as well as "documents incorporated into the complaint by reference, and matters of which a court may take judicial notice." *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 322 (2007).

B.   42 U.S.C. Section 1983

Plaintiff asserts federal civil rights claims pursuant to 42 U.S.C. § 1983, which provides a private cause of action for violations of federal constitutional rights. The statute provides in pertinent part:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for

redress . . . .

42 U.S.C. § 1983.

Section 1983 does not create substantive rights, but instead provides remedies for rights established elsewhere. *City of Oklahoma City v. Tuttle*, 471 U.S. 808, 816 (1985). To succeed on a 42 U.S.C. § 1983 claim, a plaintiff must demonstrate that the defendant, acting under color of state law, deprived the plaintiff of a right secured by the United States Constitution. *Mark v. Borough of Hatboro*, 51 F.3d 1137, 1141 (3d Cir. 1995).

III.   DISCUSSION

The four motions to dismiss raise common issues. Nurse Detterline, County Defendants, Wellpath Defendants, and SHC all request this Court dismiss Plaintiff's claims for deliberate indifference against them, contained in Count I and Count II of the amended complaint. (Doc. 67, at 6; Doc. 68, at 2; Doc. 69, at 5; Doc. 78, at 5). County Defendants additionally request this Court dismiss Count III and Count IV against the County, in which Plaintiff respectively alleges violations of the ADA and RA. (Doc. 68, at 2). Lastly, County Defendants argue Plaintiff's Fourteenth Amendment State Created Danger claims against Shank and the County in Count V should also be dismissed. (Doc. 68, at 2).

Plaintiff maintains she has sufficiently alleged each of the claims contained in her amended complaint. (Doc. 70; Doc. 71; Doc. 72; Doc. 79). The Court will address the deliberate indifference issues together, grouping the individual defendants and the entities. The Court will then address the remaining claims and arguments.

A.   COUNT I: FOURTEENTH AMENDMENT DELIBERATE INDIFFERENCE AGAINST INDIVIDUAL DEFENDANTS

In Count I of the amended complaint, Plaintiff asserts her a Fourteenth Amendment deliberate indifference claim against the individual defendants Nurse Detterline, Nurse

Mazzulla, Officer King, Officer Etters, Officer Muther, Officer Shank, and Officer Young. (Doc. 58, at 16). The suicide of a pretrial detainee can support a recovery in a § 1983 action as a violation of the Fourteenth Amendment to the United States Constitution.[1] *Colburn v. Upper Darby Twp.*, 946 F.2d 1017, 1023 (1991) ("*Colburn II*"); *Plasko v. City of Pottsville*, 852 F. Supp. 1258 (E.D. Pa. 1994); *Simmons v. City of Phila.*, 947 F.2d 1042, 1067 (3d Cir. 1991). Such claims "present [ ] difficult issues because no state actor directly inflicted harm" on the prisoner. *Swan by Carello v. Daniels*, 923 F. Supp. 626, 631 (D. Del. 1995) (quoting *Colburn II*, 946 F.2d at 1023). Therefore, a plaintiff must show that state officials were deliberately indifferent in failing to prevent the self-inflicted harm. *Colburn II,* 946 F.2d at 1023. When a plaintiff seeks to hold a custodial official liable for failing to prevent an inmate's suicide, whether a pre-trial detainee or a convicted prisoner, the plaintiff must show: (1) the individual had a particular vulnerability to suicide, meaning that there was strong likelihood, rather than a mere possibility, of a suicide attempt; (2) the custodial official knew or should have known of that vulnerability; and (3) the official acted with reckless indifference to the individual's particular vulnerability. *Alexander v. Monroe County*, 734 F. Appx. 801, 804 (3d Cir. 2018); *Colburn II*, 946 F.2d at 1023.

---

[1] The claims of pre-trial detainees implicate the Fourteenth Amendment rather than the Eighth Amendment's cruel and unusual punishment provision. *Pierre v. Richards*, No. 4:23-CV-02044, 2024 WL 643294, at *5 (M.D. Pa. Feb. 15, 2024). "However, it does not appear that the United States Court of Appeals for the Third Circuit has established or adhered to a different standard with respect to Fourteenth Amendment pretrial detainee medical care claims versus those raised by incarcerated individuals under the Eighth Amendment." *Pierre*, 2024 WL 643294, at *5. Accordingly, the Court will apply existing Eighth Amendment jurisprudence as well as Fourteenth Amendment case law to Plaintiff's Fourteenth Amendment prison suicide deliberate indifference claims. *Pierre*, 2024 WL 643294, at *5.

The first element which requires a showing that the detainee had a "particular vulnerability to suicide" "speaks to the degree of risk inherent in the detainee's condition." *Colburn II*, 946 F.2d at 1024. With presence of such risk, the second element requires the plaintiff to either show subjective knowledge of the vulnerability or that the official should have known that the detainee was particularly vulnerable. *Colburn II*, 946 F.2d at 1024-25. "Should have known," in this context, goes beyond knowledge with ordinary prudence or negligence but is less than subjective appreciation of the risk. *Colburn II*, 946 F.2d at 1025 (explaining that a defendant's failure to recognize large prominent scars on a decedent's wrists, elbows, and neck as indicative of suicidal tendencies amounted only to negligence precluding liability) (citing *Freedman v. City of Allentown*, 853 F.2d 1111, 1116 (3d Cir. 1988)). Element three, deliberate or reckless indifference, is a willingness to ignore a foreseeable danger to the detainee's vulnerability, or conscience-shocking behavior in unhurried situations. *Kedra v. Schroeter*, 876 F.3d 424, 446 (3d Cir. 2017) (quoting *Morse v. Lower Merion Sch. Dist.*, 132 F.3d 902, 910 (3d Cir. 1997); *Vargas v. City of Phila.*, 783 F.3d 962, 973 (3d Cir. 2015)).

### 1. Mr. McCullough's Particular Vulnerability to Suicide

First, the Court must determine whether Plaintiff has alleged Mr. McCullough had a particular vulnerability to suicide. To meet her pleading burden, Plaintiff must allege facts sufficient to support there was a "strong likelihood" rather than a mere possibility that self-harm would occur to Mr. McCullough. *See Hinton v. United States*, No. 4:14-CV-0854, 2015 WL 737584, at *5 (M.D. Pa. Feb. 20, 2015) (a plaintiff must establish that there is a "strong likelihood, rather than a mere possibility, that self-inflicted harm will occur." (quoting *Colburn II*, 946 F.2d at 1024)). To constitute a "strong likelihood" the risk must be so obvious that a

lay person would easily recognize the necessity for preventative action. *Palakovic v. Wetzel*, 854 F.3d 209, 222 (3d Cir. 2017) (quoting *Colburn II*, 946 F.2d at 1025). Courts have found this threshold is met where a decedent was at some time diagnosed with depression and suicidal tendencies, had previously attempted self-harm, had been hospitalized for psychiatric care, and recently had expressed suicidal ideation. *See, e.g., Redclift v. Schuylkill Cnty.*, No. 4:21-CV-1866, 2022 WL 3973824, at *5 (M.D. Pa. Aug. 31, 2022) (concluding plaintiff had established the decedent had a particular vulnerability to suicide where the complaint alleged decedent suffered from multiple mental illnesses, suicidal tendencies, had a history of past suicide attempts, and has been hospitalized for psychiatric treatment in the past). "When a mentally ill, depressed person has attempted to kill himself multiple times [and] has engaged in self-harm, ... it cannot be said as a matter of law that the risk of suicide is nothing more than a 'mere possibility.'" *Palakovic*, 854 F.3d at 230.

Plaintiff has alleged Mr. McCullough was "involuntarily hospitalized pursuant to a 302 order for suicidal ideations immediately preceding his commitment to CCCF." (Doc. 58, ¶ 171). Plaintiff has alleged that Mr. McCullough had a documented psychiatric history and had expressed thoughts about suicide along with a plan to kill himself to medical professionals just days before his suicide. (Doc. 58, ¶ 52). Further, Plaintiff alleges Mr. McCullough attempted to kill himself while at CCCF. (Doc. 58, ¶¶ 76, 77, 81). This attempt resulted in Mr. McCullough falling from his top bunk, being hospitalized briefly, and injuring his neck. (Doc. 58, ¶¶ 76, 77, 81). Lastly, while Mr. McCullough was not placed on suicide watch at CCCF, Plaintiff alleges he was placed on a behavioral watch and assigned to a cell with constant video observation because of his behaviors and documented mental history. (Doc. 58, ¶¶ 85-87). Combined, these allegations are sufficient to establish Mr. McCullough had a

particular vulnerability to suicide, thus satisfying prong one of the deliberate indifference analysis as to all individually named defendants. *See Brown v. Monsalud*, No. 1:20-CV-0849, 2021 WL 4502238, at \*6 (M.D. Pa. Sept. 30, 2021) (prisoner-plaintiff with extensive mental health history, past suicide attempts, and need for vision sustaining medication sufficiently pleaded his particular vulnerability to suicide to set forth a plausible deliberate indifference claim); *see Mullin v. Balicki*, No. 11-CV-247, 2019 WL 2315044, at \*5 (D.N.J. May 31, 2019) (finding that a "documented history of suicidal behavior [along with a history of mental illness and other suggestions] clearly indicates that there was a 'strong likelihood, rather than a mere possibility that self-inflicted harm would occur.'"); *see Stuart v. Pierce*, No. 17-934, 2022 WL 605821, at \*6 (D. Del. Feb. 24, 2022) (decedent that had been placed on suicide watch and presented other indications of suicidal tendencies demonstrated a particular vulnerability to suicide; *see Zheng v. Palakovich*, No. 4:09-CV-1028, 2010 WL 1508521, at \*5 (M.D. Pa. Apr. 13, 2010) (concluding plaintiff pled a particular vulnerability to suicide where he had been diagnosed with depression and suicidal tendencies, requested psychiatric help on multiple occasions and was concerned with the danger he posed to himself). Accordingly, Plaintiff's claim as to each individual defendant will turn on whether that defendant knew or should have known of Mr. McCullough's particular vulnerability to suicide, and whether that defendant was recklessly indifferent to Mr. McCullough's particular vulnerability to suicide. *Alexander*, 734 F. App'x at 804.

### 2.  Knowledge of Mr. McCullough's Vulnerability to Suicide

To satisfy prong two of the deliberate indifference analysis, "the plaintiff must plead facts that show that the strong likelihood of suicide was so obvious that a layperson would easily recognize the necessity for preventative action." *Colburn*, 946 F.2d at 1025. "It is not

necessary that the custodian have a subjective appreciation of the detainee's 'particular vulnerability. . . [n]evertheless, there can be no reckless or deliberate indifference to that risk unless there is something more culpable on the part of the officials than a negligent failure to recognize the high risk of suicide.'" *McAndrew v. Northumberland Cnty.*, No. 4:22-CV-00834, 2023 WL 5351994, at *4 (M.D. Pa. Aug. 21, 2023) (quoting *Woloszyn v. Cnty. of Lawrence*, 396 F.3d 314, 320 (3d Cir. 2005)). The Court will review the application of prong two as to each individual defendant. When determining whether a custodial official has knowledge of an inmate's particular vulnerability to suicide, courts look to whether the official has knowledge of past suicide attempts or a "psychiatric diagnosis identifying suicidal propensities." *Palakovic*, 854 F.3d at 222-23 (quoting *Colburn II*, 946 F.2d at 1024-25).

a. Nurse Detterline

Plaintiff has plausibly alleged that Nurse Detterline had actual knowledge of Mr. McCullough's particular vulnerability to suicide because the amended complaint provides Nurse Detterline knew of Mr. McCullough's past suicide attempts and his "psychiatric diagnosis identifying suicidal propensities." *Palakovic*, 854 F.3d at 222-23. First, according to the amended complaint, Nurse Detterline was advised that Mr. McCullough "had been committed under a 302 order with suicidal ideations following the events that took place on October 18, 2021 during which he threatened to kill himself and/or others." (Doc. 58, ¶ 43). Second, the amended complaint alleges Nurse Detterline was provided with a "Data Sheet" indicating Mr. McCullough was suicidal and experiencing thoughts of self-harm. (Doc. 58, ¶¶ 51, 52; Doc. 71, at 12). Third, the amended complaint alleges that Nurse Detterline himself reported that Mr. McCullough was experiencing suicidal thoughts and that Mr. McCullough had a possible plan for suicide. (Doc. 58, ¶¶ 51-52, 66-67). These allegations are sufficient to

satisfy Plaintiff's burden to plead that Nurse Detterline had knowledge of Mr. McCullough's particular vulnerability to suicide. *See Redcliff*, 2022 WL 3951356, at \*6 (finding the second element of a deliberate indifference claim met where officials were told the individual was mentally ill, had suicidal tendencies, and had a history of suicide attempts); *see also Schiavone v. Luzerne County*, No. 21-1686, 2022 WL 3142615, at \*5 (M.D. Pa. Aug. 5, 2022) (finding prong two of a prison suicide deliberate indifference claim was sufficiently pled as to medical defendants where the decedent had documented mental health issues, hospitalizations for mental health, and had contemplated suicide in the prior year); *see also Myers v. Clinton Cnty. Corr. Facility*, No. 3:21-CV-00867, 2023 WL 8117711, at \*5 (M.D. Pa. July 11, 2023), *report and recommendation adopted*, No. CV 3:21-867, 2023 WL 8117703 (M.D. Pa. Sept. 26, 2023) (finding the second prong of deliberate indifference analysis was satisfied where a nurse was informed of decedent's prior hospitalization and psychiatric history); *see also Brown*, 2021 WL 4502238, at \*6 (prisoner-plaintiff with extensive mental health history, past suicide attempts, and need for vision sustaining medication sufficiently pleaded his particular vulnerability to suicide as to set forth a plausible deliberate indifference claim). Accordingly, prong two of Plaintiff's deliberate indifference claim is met as to Nurse Detterline.

     b. <u>Nurse Mazzulla</u>

Plaintiff has plausibly alleged that Nurse Mazzulla had actual knowledge of Mr. McCullough's particular vulnerability to suicide because the amended complaint provides Nurse Mazzulla, like Nurse Detterline, knew of Mr. McCullough's past suicide attempts and his "psychiatric diagnosis identifying suicidal propensities." *Palakovic*, 854 F.3d at 222-23. According to Plaintiff's amended complaint, Nurse Mazzulla was aware of Mr. McCullough's risk of self-harm and his bizarre behavior. (Doc. 58, ¶ 120). During her triage

of Mr. McCullough, she indicated that there was "a reason to believe that arrestee may be suicidal, dangerous to himself or others." (Doc. 58, ¶ 45). Plaintiff further alleges that all nurses, including Nurse Mazzulla, were notified that Mr. McCullough had been committed under a 302 order with suicidal ideations and that Mr. McCullough had recently threatened to kill himself. (Doc. 58, ¶ 43). Accordingly, for similar reasons as to Nurse Detterline, Plaintiff has met her burden of demonstrating Nurse Mazzulla had knowledge of Mr. McCullough's vulnerability to suicide for the purpose of a motion to dismiss.

c.  Correctional Officer Defendants

Plaintiff has also sufficiently pled that the Correctional Officer Defendants each had actual knowledge of Mr. McCullough's mental health challenges and suicidal tendencies. (Doc. 58, ¶ 109). The amended complaint provides that Correctional Officer Defendants "were all aware that Mr. McCullough had been incarcerated at CCCF following his 302 commitment related to suicidal activity." (Doc. 58, ¶ 109). When an official has "actual knowledge of a history of suicide attempts" it is understood that they "know" of the subject's particular vulnerability to suicide. *Palakovic*, 854 F.3d at 230-31. Even beyond Plaintiff's allegation that all Correctional Officer Defendants were notified of Mr. McCullough's past suicidal activity, Plaintiff alleges Correctional Officers King, Etters, Young and Muthler "all knew of Mr. McCullough's suicidal tendencies and that he was suicidal based on his placement on behavioral watch and in a cell that had constant video surveillance." (Doc. 58, ¶¶ 110-111, 117; Doc. 72, at 15); *cf. McAndrew*, 2023 WL 5351994, at *5 ("Because [Decedent] was on suicide watch, and the Jail and COs knew or should have known that fact, the Amended Complaint's allegations satisfy this prong."). Accordingly, at this very early stage of the litigation, Plaintiff has again sufficiently pled prong two of her deliberate indifference

claim as it relates to the Correctional Officer Defendants. *See Redclift*, 2022 WL 3951356, at *7 (finding correctional officers had actual knowledge of a decedent's particular vulnerability to suicide where they had actual knowledge of past suicide related activity).

### 3. Reckless Indifference to Mr. McCullough's Particular Vulnerabilities

Reckless or deliberate indifference to the risk of suicide requires a showing of "something more culpable on the part of the officials than a negligent failure to recognize the high risk." *Palakovic*, 854 F.3d at 231 (quoting *Woloszyn v. Cty. of Lawrence*, 396 F.3d 314, 320 (3d Cir. 2005)). In a prison context, reckless indifference implies "a willingness to ignore a foreseeable danger to the detainee's vulnerability, or conscience-shocking behavior in unhurried situations." *Kedra v. Schroeter*, 876 F.3d 424, 446 (3d Cir. 2007). That considered, "a prison custodian is not a guarantor of a prisoner's safety, and therefore the fact that a suicide took place is not enough on its own to establish that prison officials were recklessly indifferent in failing to take precautions to protect prisoners entrusted to their care." *Wargo v. Schuykill County*, 348 F. App'x 756, 759 (3d Cir. 2009) (quoting *Freedman v. City of Allentown*, 853 F.2d 1111, 1115 (3d Cir. 1988)). "'Because of the nature of the [vulnerability-to-suicide] analysis,' determinations as to whether a plaintiff can establish deliberate indifference or merely negligence in prison suicide cases 'are very fact sensitive.'" *Carlos v. York Cty.*, No. 1:15-CV-1994, 2019 WL 6699710, at *18, (M.D. Pa. Dec. 9, 2019) (quoting *Estate of Puza v. Carbon County*, 586 F. Supp. 2d 271, 278 (M.D. Pa. 2007)). "Courts in the Third Circuit have also required a plaintiff to plead causation, which has been stated to be a 'causal nexus.'" *McAndrew*, 2023 WL 5351994, at *5.

a. <u>Nurse Detterline</u>

Plaintiff has sufficiently pled that Nurse Detterline acted recklessly indifferent to Mr. McCullough's particular vulnerability to suicide by not recommending Mr. McCullough be put on suicide watch. *See Myers*, 2023 WL 8117711, at *6 (finding prong three of the prison-suicide reckless indifference claim met where medical defendants knew about the decedent's vulnerability to suicide but failed to place them on suicide watch). As alleged by Plaintiff, Mr. McCullough was first placed into general population by Nurse Detterline despite recognizing Mr. McCullough has expressed suicidal thoughts and had a plan to kill himself. (Doc. 58, ¶¶ 50, 52). Even after Mr. McCullough's October 24, 2021, suicide attempt at CCCF, Nurse Detterline still not did place Mr. McCullough on suicide watch, ensure he had appropriately suicide-proof accommodations, or restrict Mr. McCullough's access to implements of suicide such as bedsheets. (Doc. 58, ¶¶ 48-54, 66-70, 79-82, 121, 122); *see DeJesus v. State*, 210 F. Supp. 3d 620, 626 (D. Del. 2016) ("Defendants' failure to follow routine housing assignments or to perform timely rounds while being aware of decedent's particular vulnerability to suicide is sufficient to plausibly demonstrate a reckless indifference to decedent's particularized needs."); *cf. McAndrew v. Northumberland Cnty.*, No. 4:22-CV-00834, 2023 WL 5351994, at *5 (M.D. Pa. Aug. 21, 2023) (finding a jail's placement of a decedent in a room with a top bunk despite suicidal vulnerabilities sufficient to allege reckless indifference). Thus, because the amended complaint adequately alleges that Nurse Detterline "ignored foreseeable danger" given McCullough's particular vulnerabilities, Plaintiff has met her pleading burden as to her deliberate indifference claim against Nurse Detterline at this stage of the litigation. *See Schiavone*, 2022 WL 3142615, at *5 (finding plaintiff plausibly alleged reckless indifference where the decedent was released into general population without adequate mental health care, especially considering her history of hospitalizations and suicidal ideations).

Additionally, the Court notes that Plaintiff has satisfied the causation requirement as to Nurse Detterline because Nurse Detterline's failure to place Mr. McCullough on suicide watch despite his actual knowledge of Mr. McCullough's vulnerability to suicide facilitated his suicide. *McAndrew*, 2023 WL 5351994, at *5 ("[Plaintiff] sufficiently satisfies the causation requirement, as Jail staff's decision to place [Decedent] in the wrong kind of room gave her access to the fixture that she used to facilitate her suicide."). Accordingly, Nurse Detterline's Motion to Dismiss will be **DENIED**. (Doc. 63).

      b. Nurse Mazzulla

      According to the amended complaint,

> Nurse Mazzulla was aware of Mr. McCullough's risk of self-harm and his bizarre behavior, but she did not place Mr. McCullough on suicide watch, did not restrict his access to ligature that could be used to commit suicide, did not refer Mr. McCullough for mental health help and instead simply cleared Mr. McCullough for entry into CCCF.

(Doc. 58, ¶ 120).

      Wellpath Defendants argue that Plaintiff's claims against Nurse Mazzulla at most suggest she was negligent. (Doc. 67, at 12). According to Wellpath Defendants, "[a]s averred in the Amended Complaint, although Ms. Mazzulla did not place Mr. McCullough on suicide watch, he was still being processed for medical intake by others who could have made that designation and, even so, he was still placed in an observation cell for regular monitoring." (Doc. 67, at 13). Plaintiff maintains Nurse Mazzulla was recklessly indifferent to Mr. McCullough's suicidal vulnerabilities because she failed to place Mr. McCullough on suicide watch despite her triage notes, in which she recognized Mr. McCullough was displaying "bizarre and aggressive behavior" and that there was "a reason to believe that arrestee may be suicidal, dangerous to himself or others." (Doc. 58, ¶ 45). The Court agrees.

Assuming Plaintiff's allegations are true, Nurse Mazzulla had a duty to immediately place Mr. McCullough on suicide watch, or otherwise take necessary precautions, and her failure to do so amounts reckless indifference. *Lewis*, 2016 WL 7239937, at *4 ("when the factual scenario presented by a plaintiff suggests that the defendant should have known that a prisoner was a suicide risk, and failed to take necessary and available precautions to protect the prisoner from self-inflicted wounds, the complaint will survive dismissal."). Further, Plaintiff has satisfied the causation requirement as to Nurse Mazzulla because, as with Nurse Detterline, Plaintiff has that alleged because Nurse Mazzulla failed to place Mr. McCullough on suicide watch, Mr. McCullough was able to commit suicide. Accordingly, Wellpath Defendants' motion to dismiss is **DENIED** as to Plaintiff's deliberate indifference claim against Nurse Mazzulla. (Doc. 65); *see Schiavone*, 2022 WL 3142615, at *5 (finding plaintiff plausibly alleged reckless indifference where the decedent was released into general population without adequate mental health care, especially considering her history of hospitalizations and suicidal ideations).

### c. Correctional Officer Defendants

According to Plaintiff, Correctional Officer Defendants were each recklessly indifferent to Mr. McCullough's vulnerability to suicide. (Doc. 72, at 17). First, Plaintiff alleges Officer Shank was recklessly indifferent to Mr. McCullough's vulnerability to suicide because he provided Mr. McCullough "with ligature that could be used for suicide despite his known and documented suicidal tendencies" despite his knowledge of Mr. McCullough's suicidal past. (Doc. 58, ¶ 107; Doc. 72 at 17).; *See Nealman v. Laughlin*, No. 1:15-CV-1579, 2016 WL 4539203, at *9 (M.D. Pa. Aug. 31, 2016) (opting not to dismiss a prison-suicide deliberate indifference claim against a nurse because, "despite defendants' knowledge of

[Decedent's] mental state and potential for self-harm," decedent did not receive immediate medical treatment and was given instrumentality with which they committed suicide). Second, Plaintiff alleges that Officer Muthler, Officer King, Officer Etters, and Officer Young were recklessly indifferent when they failed to monitor Mr. McCullough personally and when they failed to monitor his cell via surveillance video, despite the fact Mr. McCullough was supposed to be on behavioral watch and checked every thirty minutes and also suject to 24/7 video surveillance. (Doc. 58, ¶¶ 63, 110-111; Doc. 72 at 17-18). Finally, Plaintiff contends that all Correctional Officer Defendants acted with deliberate indifference when they failed to recommend Mr. McCullough for suicide watch at any point during his four days at CCCF, despite their actual knowledge that Mr. McCullough was particularly vulnerable to suicide and their knowledge of past suicide attempt. (Doc. 58, ¶¶ 107, 109-114; Doc. 72. at 18). Plaintiff has also sufficiently pled the causation requirement as to Correctional Officer Defendants because she has alleged that their decisions facilitated Mr. McCullough's suicide. *See McAndrew*, 5351994, at *5) ("McAndrew sufficiently satisfies the causation requirement, as Jail staff's decision to place Ms. McAndrew in the wrong kind of room gave her access to the fixture that she used to facilitate her suicide.")

All this considered, Plaintiff has satisfied her burden to plead that the Correctional Officer Defendants were recklessly indifferent to Mr. McCullough's suicidality. The Correctional Officers took no action to put Mr. McCullough on suicide watch, adhere to their monitoring duties put in place because of his suicidal vulnerabilities, or otherwise act to protect Mr. McCullough from self-harm. *McCracken v. Fulton Cnty.*, No. 3:19-CV-1063, 2020 WL 2767577, at *7 (M.D. Pa. May 28, 2020) (finding a reckless indifference claim sufficiently pled where plaintiff alleged correctional officers had knowledge that the decent was suicidal,

but took no action to have them evaluated, placed on suicide watch, or "otherwise protect[]
[him,] from himself"); *see also Redclift*, 2022 WL 3951356, at *7 ("Plaintiff alleges that
[correctional officer] was aware of [Decedent's] vulnerability to suicide and recklessly ignored
that risk by failing to tell the Prison about that risk. [] Thus, the deliberate indifference to
suicide claim against [correctional officer] will survive."); *see also Myers*, 2022 WL 21757200,
at *5 (finding reckless indifference prong of a prison suicide deliberate indifference claim met
where correctional officers provided decedent with instrumentality through which they were
able to commit suicide, despite knowledge of their mental health history and suicidal
vulnerability); *cf. McAndrew*, 2023 WL 5351994, at *5 (finding correctional officer's placement
of a suicidal inmate in a room with a top bunk sufficient to show reckless indifference at the
motion to dismiss stage). Accordingly, County Defendants' Motion to Dismiss Plaintiff's
deliberate indifference claims against the Correctional Officer Defendants will be **DENIED.**

B. COUNT II: FOURTEENTH AMENDMENT DELIBERATE INDIFFERENCE
AGAINST THE COUNTY, WELLPATH, AND SHC

In Count II of the amended complaint, Plaintiff asserts Fourteenth Amendment
deliberate indifference claims against the County, Wellpath, and SHC. (Doc. 58, at 20).
According to Plaintiff, "The County, Wellpath and SHC had policies, customs and/or
practices that resulted in the violation of Mr. McCullough's Fourteenth Amendment rights."
(Doc. 58, ¶ 126). "A municipality, such as [the] County, cannot be held liable under 42 U.S.C.
§ 1983 for the unconstitutional acts of its employees on a theory of *respondeat superior*." *Monell
v. Dep't of Soc. Servs. of City of New York*, 436 U.S. 658, 691 (1978). The County can, however,
be held liable for its own unconstitutional acts. *Connick v. Thompson*, 563 U.S. 51, 60 (2011).
"A municipality or other local government may be liable under this section if the
governmental body itself 'subjects' a person to a deprivation of rights or 'causes a person 'to

be subjected' to such deprivation." *Connick*, 563 U.S. at 60. To impose liability on the County under § 1983, Plaintiff must prove that "action pursuant to official municipal policy" caused her injury or that she was injured by a failure or inadequacy by the municipality that "reflects a deliberate or conscious choice." *Monell*, 436 U.S. at 691; *Forrest v. Parry*, 930 F.3d 93, 105 (3d Cir. 2019). This second method of proving liability "arose in the failure-to-train context, but applies to other failures and inadequacies by municipalities, including those related to supervision and discipline of its ... officers." *Forrest* 930 F.3d at 105. "A plaintiff asserting a municipal liability claim based on a failure or inadequacy of training, supervision, or discipline does not need to show an unconstitutional policy." *Evans v. Columbia Cnty.*, No. 1:20-CV-00722, 2024 WL 115202, at *34 (M.D. Pa. Jan. 10, 2024). Instead, the plaintiff must demonstrate that the County's failure to train, supervise, or discipline amounted "to deliberate indifference on the part of the municipality." *Forrest*, 930 F.3d at 106.

In the context of a prison suicide, a plaintiff must "(1) identify specific training not provided that could reasonably be expected to prevent the suicide that occurred and (2) demonstrate that the risk reduction associated with the proposed training is so great and so obvious" that failing to offer it "can reasonably be attributed to a deliberate indifference to whether the detainees succeed in taking their lives." *Bingham v. Lancaster Cnty.*, No. 5:22-CV-02769-JMG, 2024 WL 23139, at *11 (E.D. Pa. Jan. 2, 2024) (quoting *Palakovic*, 854 F.3d at 233). "A pattern of similar constitutional violations by untrained employees is ordinarily necessary to demonstrate deliberate indifference for purposes of failure to train." *Connick*, 563 U.S. at 62; *see also Bingham*, 2024 WL 23139, at *11. "A county policymaker's 'continued adherence to an approach that they know or should know has failed to prevent tortious conduct by employees may establish the conscious disregard for the consequences of their

action—the deliberate indifference—necessary to trigger municipal liability.'" *Bingham*, 2024 WL 23139, at *11 (quoting *Connick*, 563 U.S. at 62).

### 1. The County

The amended complaint sufficiently alleges that the County promulgated a policy or custom that denied suicidal inmates with appropriate suicide care and prevention for the purpose of County Defendants' instant motion to dismiss. In the amended complaint, Plaintiff asserts the County's suicide policy was "a paper policy only that was not utilized by the County" and that the policy denied "suicidal inmates with appropriate and necessary items to prevent suicide, including suicide proof clothing and blankets, as well as appropriate living quarters such as suicide-proof cells." (Doc. 58, ¶¶ 128, 134). Further, Plaintiff alleges the County had a policy or practice of employing temporary nurses who lacked "necessary knowledge and/or skills to provide constitutionally adequate inmate health care." (Doc. 58, ¶¶ 139, 141). Lastly, the amended complaint contains allegations that the County had a policy or practice of failing to consistently monitor inmates on behavioral watch and that the system for discerning an inmate's placement was faulty, which resulted in harm. (Doc. 58, ¶¶ 137-138).

These allegations are sufficient at this early stage of litigation, as a "plaintiff is not obligated to plead with special particularity the exact policies and practices that were in place, prior to taking any discovery into the alleged policies, and explain exactly how these precisely alleged policies caused or contributed to [an individual's] injuries." *Rodriguez v. City of Phila.*, No. 14-CV-7362, 2015 WL 4461785, at *3 (E.D. Pa. July 21, 2015); *see also Reed v. City of Philadelphia*, No. CV 20-3640, 2021 WL 2529915, at *3 (E.D. Pa. June 17, 2021). Accordingly, Plaintiff has met her burden as it relates to her Fourteenth Amendment

deliberate claim against the County. *See Bucek v. Allegheny Cnty.*, No. 2:22-CV-940-NR, 2023 WL 4594840, at *3 (W.D. Pa. July 18, 2023) (finding plaintiff had stated a sufficient deliberate indifference claim against a county where the complaint alleged the county maintained a policy where inmates did not receive proper suicide care and that the county had failed to correct defective policies and training procedures); *see Redclift*, 2022 WL 3973819, at *9 (finding plaintiff had sufficiently pled a deliberate indifference claim pursuant *Monell* where plaintiff had pled staff were not trained correctly); *Reed*, 2021 WL 2529915, at *3 ("[a]t this stage of the proceedings, plaintiff's allegations with respect to the lack of training on monitoring and treating detainees at risk of suicide are sufficient to state a *Monell* claim against the City based on a failure to train theory."); *Lewis v. Cnty. of Northumberland*, No. 4:14-CV-02126, 2016 WL 7239937, at *5 (M.D. Pa. Dec. 15, 2016) (allegations that the county failed to properly train and supervise staff in monitoring suicidal inmates and practice of failing to place suicidal inmates on suicide watch were sufficient at the motion to dismiss stage). County Defendants' motion to dismiss Plaintiff's deliberate indifference claim as it relates to the County will be **DENIED**.

### 2.  Wellpath & SHC

Similar to municipal liability, a private organization may only be held liable for a constitutional violation under § 1983 if they maintain an unconstitutional custom or policy. Under § 1983, "a private corporation contracted by a prison to provide healthcare for inmates cannot be held liable on a *respondeat superior* theory; rather, pursuant to [*Monell*], a private corporation can be held liable for constitutional violations only if it has a custom or policy exhibiting deliberate indifference to a prisoner's serious medical needs." *Gannaway v. Prime Care Medical, Inc.*, 150 F. Supp. 3d 511, 530 (E.D. Pa. 2015); *see also Carlos v. York Cnty.*, No.

1:15-CV-1994, 2019 WL 6699710, at *28 (M.D. Pa. Dec. 9, 2019). Thus, as was true with her deliberate indifference claim against the County, for the purpose of the instant motions to dismiss Plaintiff must allege both Wellpath and SHC maintained "a custom or policy exhibiting deliberate indifference to prisoners' particular vulnerabilities to suicide." *Carlos,* 2019 WL 6699710, at *28.

Plaintiff alleges Wellpath and SHC instituted and maintained policies denying suicidal inmates with appropriate care, including suicide-proof living quarters, and had improper supervision policies for suicidal inmates. (Doc. 58, ¶¶ 128-134). The amended complaint also alleges that both Wellpath and SHC failed to properly train their staff on adequate suicide prevention procedures and the proper placement of suicidal inmates. (Doc. 58, ¶¶ 134-136). Again, drawing all reasonable inferences in Plaintiff's favor, the Court finds she had sufficiently pled her deliberate indifference claim against both Wellpath and SHC at this early stage of the litigation. *See Lewis,* 2016 WL 7239937, at *5 (allegations that a prison's medical provider failed to properly train and supervise staff in monitoring suicidal inmates and practice of failing to place suicidal inmates on suicide watch were sufficient for plaintiff's deliberate indifference claim to survive dismissal). "It is necessary that this issue proceed to discovery because evidence concerning the existence of any improper policies, customs, or procedures will be addressed in the discovery process, and the presence of a dispute of material fact as to such policies or procedures may be determined through a future motion for summary judgment." *Lewis,* 2016 WL 7239937, at *5. Accordingly, Wellpath Defendants and SHC's motions to dismiss will be **DENIED** as they relate to Plaintiff's deliberate indifference

claims against Wellpath and SHC.[2] (Doc. 65; Doc. 76).

    C.    COUNT III: VIOLATION OF THE AMERICANS DISABILITY ACT & COUNT IV: VIOLATION OF THE REHABILITATION ACT AGAINST THE COUNTY

In Count III and Count IV of the amended complaint, Plaintiff alleges that the County violated the ADA and the RA. (Doc. 58, at 23- 25). According to Plaintiff, prior to his death Mr. McCullough was disabled within the meaning of the ADA and the RA because he was suicidal, struggled with mental health related illness including psychosis, and suffered depression. (Doc. 58, ¶¶ 149-151). Plaintiff alleges "the County denied Mr. McCullough his rights under the Americans with Disabilities Act [and the RA] by failing to accommodate his known disabilities and implement necessary suicide-prevention methods, namely, keeping Mr. McCullough in a suicide smock, providing him a knot-proof suicide blanket, and/or keeping Mr. McCullough in a suicide-proof cell." (Doc. 58, ¶ 152). County Defendants argue these claims should be dismissed.

Under Title II of the ADA, "no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity."

---

[2] SHC argues that the Court should consider staffing agreements between the SHC and the CCCF that are attached to their motion as an exhibit and dismiss Plaintiff's claim against it using a summary judgment standard. (Doc. 78, at 7). According to SHC, "Under the terms of the staffing agreements Wellpath, LLC was responsible for making the final determination that any of SHC's provided personnel were suitable and had the 'documented competencies and experience…for the designated assignment.'" (Doc. 78, at 7). SHC alleges that under this agreement, they cannot be considered "state actors" for the purposes of § 1983. (Doc. 78, at 7). Plaintiff responds that "that SCH [sic] neither tries, nor would it be valid if it tried, to contract away the constitutional obligation it undertook by participating in the provision of health care within a jail." (Doc. 78, at 7). Further, that discovery is need on this issue. (Doc. 79, at 21). As averred by Plaintiff, SHC's arguments and their attached staffing agreements are better considered after discovery. (Doc. 79, at 21). Looking just at the face of the complaint and Plaintiff's allegations, her § 1983 deliberate indifference claim against SHC survives.

42 U.S.C. § 12132. To establish a claim under Title II of the ADA, a plaintiff must allege that: "(1) he is a qualified individual with a disability; (2) he was either excluded from participation in or denied the benefits of some public entity's services, programs, or activities; and (3) such exclusion, denial of benefits, or discrimination was by reason of his disability." *McPherson v. County of Dauphin*, No. 19-1865, 2020 WL 1558206, at *2 (M.D. Pa. Mar. 24, 2020). The RA requires the same showing but applies only to "any program or activity receiving Federal financial assistance" and requires a plaintiff to demonstrate that their disability was the sole reason for the discrimination, not merely one reason. 29 U.S.C. § 794(a); *CG v. Pa. Dep't Educ.*, 734 F.3d 229, 235–36 (3d Cir. 2013).

"[D]ecisions about a prisoner's medical treatment generally do not give rise to a claim under the ADA." *Nunez v. Prime Care Health, Inc.*, No. 19-CV-859, 2019 WL 1400466, at *1 n.3 (E.D. Pa. Mar. 27, 2019) (collecting cases). These claims would inevitably fail because the ADA and RA "prohibit[ ] disability-based discrimination, 'not inadequate treatment for the disability.'" *Kokinda v. Pennsylvania Dep't of Corr.*, 663 F. App'x 156, 159 (3d Cir. 2016) (quotation omitted). However, a plaintiff may demonstrate a cognizable claim under the ADA and the RA if they allege a disabled detainee was denied a reasonable accommodation that would have granted them meaningful access to prison activities and programs, including those that implicate medical care. *McDonald-Witherspoon v. City of Philadelphia*, 481 F. Supp. 3d 424, 439 (E.D. Pa. 2020), *aff'd*, No.21-1019, 2021 WL 6101246 (3d Cir. Dec. 21, 2021).

The parties' arguments as to the applicability of the ADA and the RA are unclear. [3]

---

[3] The County Defendants counter that "Plaintiff does not allege these restrictions were ordered by the medical department" and that "Plaintiff cannot overcome the lack of a single claim that McCullough made statements to corrections officers that he was suicidal or that he acted in a manner, at the CCCF, suggesting he was vulnerable to suicide." (Doc. 68, at 22). County Defendants maintain that "Plaintiff pleads insufficient facts to demonstrate the

Based upon their briefing, it appears that the parties here again argue whether the Correctional Officer Defendants had actual notice that Mr. McCullough was suicidal, and thus in this context, was a qualified individual with a disability. (Doc. 68, at 21-23; Doc. 72, at 21-22). Regardless, reviewing the sufficiency of Plaintiff's allegations as they relate to her ADA and RA claims, the Court finds Plaintiff has not satisfied her burden.

For prongs one and two the of the necessary analysis, Plaintiff has arguably alleged sufficient facts. First, Plaintiff has provided Mr. McCullough was a qualified individual by alleging "Mr. McCullough was disabled within the meaning of the Americans with Disabilities Act and the Rehabilitation Act because he was suicidal, had mental health issues and suffered with depression." (Doc. 58, ¶ 149). Ultimately, this is a question of fact that "ordinarily should be resolved by a jury." *McKissick v. Cnty. of York*, No. 1:09-CV-1840, 2011 WL 5117621, at *2 (M.D. Pa. Oct. 25, 2011). Next, according to the amended complaint, the County did not provide Mr. McCullough with reasonable accommodations because they denied him adequate mental health care and a suicide proof cell and a suicide proof blanket. (Doc. 58, ¶¶ 155-57). "[I]n dictum, the Supreme Court has stated that a prison's refusal to accommodate inmates' disabilities 'in such fundamentals as mobility, hygiene, medical care, and virtually all other prison programs' constitutes a denial of the benefits of a prison's services, programs, or activities." *Furgess v. Pennsylvania Dep't of Corr.*, 933 F.3d 285, 290 (3d Cir. 2019). Applying this logic to the facts alleged here, a prison discriminates when they fail to accommodate an inmate's need for suicide related medical care or safe accommodations.[4]

---

County knew that McCullough's federally protected right to be free from disability discrimination was violated at the CCCF." (Doc. 68, at 23).

[4] This premise is distinct from the Third Circuit's conclusion that inadequate medical treatment cannot form the basis of an ADA or RA claim. *See, e.g., Kokinda v. Pa. Dep't of Corr.*, 663 F. App'x. 156, 159 (3d Cir. 2016). To sufficiently alleged an ADA or RA claim, plaintiff

*See Schiavone*, 2022 WL 3142615, at *8 (finding plaintiff sufficiently alleged her ADA and RA claims where she alleged decedent was denied access to medical care in the prison); *cf. McKissick v. Cty. of York*, No. 1:09-CV-01840, 2010 WL 1930132, at *7 (M.D. Pa. Mar. 19, 2010) (allowing an ADA claim to proceed where prison officials refused to provide a detainee with drug treatment); *but see Talley v. PA Dep't of Corr.*, No. CV 19-1687, 2019 WL 6050744 (E.D. Pa. Nov. 14, 2019) ("A denial of treatment for a disability [in a prison] is not actionable under the ADA and RA."). Thus, because she alleges Plaintiff was denied necessary suicide prevention care, Plaintiff arguably has sufficiently pled prong two of her ADA and RA claims. (Doc. 58, ¶ 152). However, the Court need not decide so definitively, because Plaintiff has clearly failed to allege Mr. McCullough was denied medical care or safe accommodations *because* of his status as a disabled person, or in other words, because he was experiencing mental illness. *Cf. Talley v. PA Dep't of Corr.*, 2019 WL 6050744, at *5 (dismissing RA and ADA claims because plaintiff failed to allege facts supporting their averment that they were denied access to prison activities because of discrimination based on their mental illness, instead pointing to the fact that the prisoner was denied access to activities because they were subject to surveillance due to their own claims of being suicidal). To meet her burden as to prong three of her ADA and RA claims, Plaintiff must also allege "facts sufficient to show" that Mr. McCullough had been excluded from reasonable accommodations "by reason of"

---

must allege they were denied access to medical care rather than just stating the medical treatment received was inadequate or deficient. *See Kloss v. Correct Care Sols.*, No. 1:18-CV-0025, 2018 WL 6268270, at *4 n.4 (W.D. Pa. Oct. 31, 2018) (stating that "[d]enying access to medications is not, however, a medical judgment or medical negligence, and such claims can be actionable under the ADA"), *report and recommendation adopted sub nom.* CV 18-25, 2018 WL 6266921 (W.D. Pa. Nov. 30, 2018); *see also McKissick v. Cty. of York*, No. 1:09-CV-01840, 2010 WL 1930132, at *7 (M.D. Pa. Mar. 19, 2010) (allowing an ADA claim to proceed where prison officials refused to provide a detainee with methadone).

his disability. *Brown v. Pa. Dep't of Corr.*, 290 F. App'x 463, 467 (3d Cir. 2008) (quoting 42 U.S.C. § 12132). Here, Plaintiff's allegation that the County failed to accommodate Mr. McCullough with adequate means of suicide prevention does not support the inference that Mr. McCullough was denied said accommodation *because* he was suicidal or experiencing mental illness. Plaintiff's circular averment that "The County's choice not to provide Mr. McCullough with reasonable accommodations for his disability constituted discrimination against him on the basis of his disability," is insufficient to meet to her pleading burden even at this early stage of the litigation. (Doc. 58, ¶ 153). Accordingly, the Court will **GRANT** the County Defendants' motion to dismiss the ADA and RA claims against the County. *See Brown v. Deparlos,* 492 F. App'x 211, 215 (3d Cir. 2012) (affirming the dismissal of an ADA claim where plaintiff failed to provide facts alleging that alleged inadequate medical care was given because of a disability); *see also Kokinda v. Pennsylvania Dep't of Corr.*, No. 2017 WL 4049255, at *9 (W.D. Pa. Aug. 29, 2017), *report and recommendation adopted*, 2017 WL 4046347 (W.D. Pa. Sept. 12, 2017), *aff'd*, 779 F. App'x 938 (3d Cir. 2019) (dismissing an ADA claim where "the complaint allege[d], at most, that Plaintiff received inadequate treatment and accommodations for his [disability]" without demonstrating the inadequate care was because of the alleged disability).

D.   COUNT V: FOURTEENTH AMENDMENT STATE-CREATED DANGER AGAINST OFFICER SHANK AND THE COUNTY

In Count V, Plaintiff brings a state-created danger claim against the County and Officer Shank. (Doc. 58, at 26). According to Plaintiff, "the County and Officer Shank placed Mr. McCullough in a position of danger that he otherwise would not have faced." (Doc. 58, ¶ 166). Whereas the State typically has no obligation to protect its constituents from harm, a plaintiff may seek recovery under § 1983 under the state-created danger theory. *Kneipp v.*

*Tedder*, 95 F.3d 1199 (3d Cir. 1996). To state a claim under the state-created danger theory, Plaintiff must allege:

> The harm ultimately caused was foreseeable and fairly direct; (2) a state actor acted with a degree of culpability that shocks the conscience; (3) a relationship between the state and the plaintiff existed such that the plaintiff was a foreseeable victim of the defendant's acts, or a member of a discrete class of persons subjected to the potential harm brought about by the state's actions, as opposed to a member of the public in general; and (4) a state actor affirmatively used his or her authority in a way that created a danger to the citizen or that rendered the citizen more vulnerable to danger than had the state not acted at all.

*Bright v. Westmoreland Cnty.*, 443 F.3d 276, 281 (3d Cir. 2006); *see also Est. of Morcho by & Through Carson v. Borough*, No. CV 22-3245, 2024 WL 21940, at *4 (E.D. Pa. Jan. 2, 2024).

To show Officer Shank and the County affirmatively used their authority to create a danger, Plaintiff "must allege facts showing [Defendants]: (1) exercised his/her authority; (2) took an affirmative action; and (3) said affirmative action created a danger to [Mr. McCullough] or rendered him more vulnerable to danger than had the Individual Defendants not acted at all." *Est. of Morcho by & Through Carson*, 2024 WL 21940, at *4; *Bright,* 443 F.3d at 281.

County Defendants argue that Mr. McCullough's suicide was not foreseeable to the County or Officer Shank and that element one of Plaintiff's state-created danger claim is insufficiently pled. (Doc. 68, at 24). Further, County Defendants aver that "Plaintiff does not allege Shank was aware McCullough was committed under a 302 with suicidal ideation or that he threatened to kill himself." (Doc. 68, at 24). Plaintiff directly refutes this assertion, stating, "all Individual Defendants, including Officer Shank, are alleged to have been aware that Mr. McCullough was incarcerated CCCF follow his 302 commitment related to suicidal activity." (Doc. 72, at 23). The amended complaint supports Plaintiff's argument. (Doc. 58,

¶ 109). To show that Mr. McCullough's suicide was foreseeable, Plaintiff again must allege that the relevant actors "actual knowledge or an awareness of risk that [was] sufficiently concrete to put [them] on notice of the harm." *Phillips v. Cnty. of Allegheny*, 515 F.3d 224, 238 (3d Cir. 2008). Plaintiff points to specific allegations in the amended complaint to support her position that the County had knowledge of Mr. McCullough's vulnerability to suicide, including allegations of Mr. McCullough's pre-incarceration suicidal behavior, Mr. McCullough's "post-incarceration conduct where he tied a ligature around his neck in an attempt to end his life," which resulted in his hospitalization, and the fact that Mr. McCullough was affirmatively documented at CCCF as suicidal. (Doc. 58, ¶¶ 25-37, 39, 45, 68, 71-81). The Court agrees with Plaintiff that these allegations together are sufficient to provide that Officer Shank and the County "had actual notice or awareness of the risk that [was] sufficiently concrete as to put [them] on notice of the risk." *Phillips*, 515 F.3d at 238; *see Mears v. Connolly*, 24 F.4th 880, 884 (3d Cir. 2022). At this early stage of the litigation, Plaintiff has met her burden as to element one of her state-create danger claim.

The County Defendants next contend, without further elaboration as to why, that "neither the County or Shank affirmatively used authority in a way that created a danger to McCullough or that rendered him more vulnerable to danger than had they not acted at all." (Doc. 68, at 25). Whether Plaintiff's state-created danger claim survives is dependent on whether Officer Shank (1) exercised his authority; (2) took an affirmative action; and (3) said affirmative action created a danger to [Mr. McCullough] or rendered him more vulnerable to danger than had [he] not acted at all." *Est. of Morcho by & Through Carson*, 2024 WL 21940, at *4. Here, Plaintiff alleges Officer Shank used his authority to take the affirmative act of issuing Mr. McCullough a sheet that could be used to take his own life, instead of a suicide proof

blanket. (Doc. 58, at 18, 26-27). Plaintiff alleges that this action caused danger to Mr. McCullough because in effect, Officer Shank gave Mr. McCullough a tool he could use to commit suicide despite having actual knowledge of the risk posed by doing so. (Doc. 58, ¶ 174). Thus, drawing all reasonable inferences in favor of Plaintiff, the Court finds she has sufficiently alleged her state-created danger claim. Considering the under-development of parties' arguments to the contrary, at this early stage of the litigation Plaintiff's state-created danger claim survives. *See Kedra v. Schroeter*, 876 F.3d 424 (3d Cir. 2017) ("In sum, because the allegations in Appellant's complaint collectively give rise to the inference that [Defendant] acted with actual knowledge of a substantial risk of lethal harm. . . Appellant has adequately pleaded her state-created danger claim" (internal citation omitted)). Accordingly, County Defendants' motion to dismiss this claim is **DENIED**.

    E.    QUALIFIED IMMUNITY

Finally, County Defendants argue that the Correctional Officer Defendants are protected by qualified immunity for the deliberate indifference claims against them.[5] (Doc. 68, at 25-26). County Defendants argue the Correctional Officer Defendants are entitled to qualified immunity because "Plaintiff has not plausibly pleaded that nonmedically trained corrections officers should have known that Nurses Mazzulla and Detterline were not properly assessing McCullough and did not provide proper medical restrictions." (Doc. 68, at 26). According to Plaintiff, County Defendants wrongly frame their argument in the context of a denial of medical care case, where the Third Circuit has established "A vulnerability to suicide claim is distinct from more generalized claims regarding the adequacy of medical

---

[5] County Defendants do not discuss Officer Shank's entitlement to qualified immunity for his state-created danger claim.

care." (Doc. 72, at 25); see *Palakovic*, 854 F.3d at 227; *McCracken*, 2020 WL 2767577, at *7. Citing *McCracken*, Plaintiff avers "[i]t is clearly established in this circuit that custodial officials may be liable for deliberate indifference to a detainee's known vulnerability to suicide." (Doc. 72, at 25); 2020 WL 2767577, at *7.

The qualified immunity doctrine protects government officials from liability for civil damages "in so far as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Pearson v. Callahan*, 555 U.S. 223, 231 (2009). Courts consider two prongs when determining whether an official is entitled to qualified immunity: "(1) whether the official violated a constitutional right; and (2) whether the right was clearly established." *McAndrew v. Northumberland Cnty.*, No. 4:22-CV-00834, 2023 WL 408905, at *6 (M.D. Pa. Jan. 25, 2023). A right is "clearly established" when "[t]he contours of the right [are] sufficiently clear that a reasonable official would understand that what he is doing violates that right." *Anderson v. Creighton*, 483 U.S. 635, 640 (1987). "The Supreme Court has stated that this standard does not require a case directly on point but requires that 'existing precedent must have placed the statutory or constitutional question beyond debate.'" *Redclift*, 2022 WL 3951356, at *11 (quoting *al-Kidd*, 563 U.S. at 741).

Because the Court has already found Plaintiff has alleged viable constitutional claims against the Correctional Officer Defendants, the focus of this inquiry will be on whether Mr. McCullough's rights were clearly established at the time they were allegedly violated. *See Stuart v. Pierce*, 587 F. Supp. 3d 127, 140 (D. Del. 2022) (In the context of a prison suicide case, stating "Because it has already been determined that [Plaintiff] alleges viable claims of constitutional violations, this analysis focuses on the second prong—whether [Plaintiff's]

rights were clearly established at the time of the alleged violation."). "There is a clearly established 'standard of liability to be applied in [the Third Circuit] in prison suicide cases.'" *DeJesus v. State*, 210 F. Supp. 3d 620, 625 (D. Del. 2016) (quoting *Colburn v. Upper Darby Twp.*, 946 F.2d 1017, 1023 (3d Cir. 1991)). "[T]here is no question that a pretrial detainee can assert a Fourteenth Amendment claim against custodial officers for deliberate indifference to his risk of suicide while in their custody" in the Third Circuit. *Redclift*, 2022 WL 3951356, at *11 (internal quotation omitted); *see Palakovic v. Wetzel*, 854 F.3d 209 (3d Cir. 2017). "If custodial officials kn[e]w or should [have] know[n] of the particular vulnerability to suicide of an inmate, then the Fourteenth Amendment imposes on them an obligation not to act with reckless indifference to that vulnerability." *DeJesus*, 210 F. Supp. 3d at 625; *see also Redclift*, 2022 WL 3951356, at *12. "As early as 1998, district courts in this circuit recognized such a clearly established right, without regard of limiting liability to officers who had actual custody of the inmate at the time of the suicide." *Redclift*, 2022 WL 3951356, at *12; *see Owens v. City of Phila.*, 6 F. Supp. 2d 373, 376-77 (E.D. Pa. 1998). Accordingly, courts in this circuit have denied qualified immunity claims in the context of prison suicide deliberate indifference claims. See *Redclift*, 2022 WL 3951356, at *12; see also *McCracken*, 2020 WL 2767577, at *11 n.7.

    At the motion to dismiss stage, the Court is singularly concerned with whether Plaintiff has sufficiently pled a claim upon which relief may be granted. Fe. R. Civ. P. 12(b)(6). Here, it is not plain from the face of the complaint, or from County Defendants arguments, that Correctional Officer Defendants are entitled to qualified immunity. Considering Plaintiff's thorough pleadings, the Court believes discovery would assist in answering this question. "It will be more appropriate to address the qualified immunity claim in the summary judgment

context as the court will be able to examine the evidence of record." *Zvonek v. Walters*, No. 3:20CV1185, 2024 WL 759865, at *3 (M.D. Pa. Feb. 23, 2024) Accordingly, considering this Circuit's case law[6] and "the disfavored nature of ruling on qualified immunity issues at the pleading stage," the Court finding Correctional Officer Defendants' entitlement to qualified immunity is not clear based solely on the face of the complaint. Therefore, the Court will **DENY** the Correctional Officer Defendants' invocation of qualified immunity at this time.[7]

---

[6] The Supreme Court has yet to resolve whether clearly established law may be determined through just the precedent of the circuit in which the district court sits, or whether there must be a consensus of circuits or only through Supreme Court decisions. *See D.C. v. Wesby*, 583 U.S. 48, 591 n.8 (2018) ("We have not yet decided what precedents—other than our own—qualify as controlling authority for purposes of qualified immunity."); *see also Reichle v. Howards*, 566 U.S. 658, 665–666, (2012) (reserving the question whether court of appeals decisions can be "a dispositive source of clearly established law").

[7] The Court acknowledges the 2015 Supreme Court case *Taylor v. Barkes*. 575 U.S. 822 (2015). In *Taylor*, the Supreme Court reversed a Third Circuit decision denying the Commissioner of the Delaware Department of Corrections ("DOC") and a prison warden's motion for summary judgment based on their entitlement to qualified immunity. *Taylor*, 575 U.S. at 824. Like the case at bar, *Taylor* involved an incarcerated individual who committed suicide while in the care and custody of the DOC. *Taylor*, 575 U.S. at 824. According to the Supreme Court, in 2004 when the suicide took place, there was not a clearly established right to "proper and adequate suicide prevention protocols" under the Constitution. *Taylor*, 575 U.S. at 824, 827. Specifically, the Supreme Court stated, "no precedent on the books in 2004 would have made clear to petitioners that they were overseeing a system that violated the Constitution." *Taylor*, 575 U.S. at 827. Notably, *Taylor* implicated defendants' duty to establish procedures to identify vulnerable individuals. *Taylor*, 575 U.S. at 826-27. The case at bar involves the deliberate indifference of individual defendants with actual knowledge of an inmate's particular vulnerability to suicide. Since 2004, this area of law has been further developed. In the 2005 case, *Woloszyn v. County of Lawrence*, the Third Circuit explained the applicability of the deliberate indifference standard to prison suicide cases involving pre-trial detainees and asserted under the Fourteenth Amendment. 396 F.3d 314 (3d Cir. 2005). In 2017, the Third Circuit reiterated that the Constitution "prohibits prison officials from being deliberately indifferent to an inmate's serious medical needs," and that the Third Circuit has "recognized that a particular vulnerability to suicide qualifies as a serious medical need." *Palakovic*, 854 F.3d, at 227. This right was further expanded by the Third Circuit in the 2018 case *Alexander v. Monroe County*. 734 F. App'x 801 (3d Cir. 2018). Because the Court finds that it is not clear from the face of the complaint that Correctional Officer Defendants are entitled to qualified immunity, the Court will reserve further examination of the County Defendants' qualified immunity defense for the more appropriate summary judgment context.

*Redclift*, 2022 WL 3951356, at *12.

## IV.   LEAVE TO AMEND

The Third Circuit has instructed that if a complaint is vulnerable to dismissal for failure to state a claim, the district court must permit a curative amendment, unless an amendment would be inequitable or futile. *Grayson v. Mayview State Hosp.*, 293 F.3d 103, 108 (3d Cir. 2002). Further, "[a] district court has 'substantial leeway in deciding whether to grant leave to amend.'" *In re Avandia Mktg., Sales Practices & Prod. Liab. Litig.*, 564 F. App'x 672, 673 (3d Cir. 2014) (not precedential) (quoting *Lake v. Arnold*, 232 F.3d 360, 373 (3d Cir. 2000)). In this case, Plaintiff has already filed an amended complaint. (Doc. 58). Further, the majority of the claims asserted therein survive despite each being challenged in Defendants' motions to dismiss. (Doc. 58). Accordingly, the Court will not grant leave to amend at this time. (Doc. 58).

## V.   CONCLUSION

For the foregoing reasons, Nurse Detterline, Wellpath Defendants, and SHC's motions to dismiss are **DENIED**. (Doc. 63; Doc. 65; Doc. 76). County Defendants' motion to dismiss will is **DENIED in part** and **GRANTED in part**. (Doc. 64). Plaintiff's claims asserted under the ADA and RA against the County, Count III and Count IV of her amended complaint, are **DISMISSED**. (Doc. 58). An appropriate Order follows.

BY THE COURT:

Dated: April 4, 2024

*s/ Karoline Mehalchick*
**KAROLINE MEHALCHICK**
**United States District Judge**